## GREAT AMERICAN INDEMNITY COMPANY *v.* SOUTHERN FEED STORES INCORPORATED.

No. 11687. APRIL 15, 1937. ADHERED TO ON REHEARING, JUNE 22, 1937.

*Harold Hirsch, Marion Smith, Welborn B. Cody,* and *Edward L. Cody,* for plaintiff in error.

*Henry C. Davidson, Warren Cox,* and *J. H. Boman Jr.,* contra.

HUTCHESON, Justice. Southern Feed Stores Inc. took out a robbery-insurance policy with the Great American Indemnity Company of New York, through the Atlanta local agency, Oberdorfer Insurance Agency, in March, 1932. While the policy was in force a robbery occurred at the store of the insured in Atlanta, on September 19, 1932. The insured brought an action at law on this policy in the municipal court of Atlanta, and relied on waiver and estoppel, as to the definition of "premises" referred to in the policy. A jury returned a verdict in favor of the plaintiff. A new trial was refused, and the defendant took the case to the Court of Appeals. That court, on July 2, 1935, reversed the judgment overruling the motion for new trial. 51 *Ga. App.* 591.

The decision of the Court of Appeals was predicated on the ground that the law of waiver and estoppel was not applicable to the facts as to the definition of "premises," as relied on by the plaintiff. An application for a writ of certiorari was refused by the Supreme Court. The case was returned to the municipal court for another trial, and while there pending Southern Feed Stores Inc. filed an equitable petition in the superior court, in October, 1935, against the insurer, to recover for the same loss, setting up the same facts with reference to the robbery under the policy of insurance, but seeking to reform the policy as to the definition of "premises" embodied in the policy, and the enforcement of the policy as reformed, and praying for a consolidation of the suit at law in the municipal court with the equitable suit in the superior court. The petition alleged, in brief, that the insurer sold to the plaintiff a robbery-insurance policy for protection against loss by robbery of merchandise at the plaintiff's place of business in Atlanta; that premiums were regularly paid by the plaintiff; that merchandise was stolen from the place of business while a custodian was in charge thereof at night; that the defendant refused to pay, because the plaintiff's custodian was not actually within the four walls of the building at the time of the robbery, although the custodian was on the plaintiff's land and at the plaintiff's place of business peforming his regular duties; that the defendant erroneously, wrongfully, and wilfully inserted in the policy a different definition of "premises" than that which the parties, when contracting, had agreed upon; that the plaintiff complied with all conditions precedent; that the action in the municipal court was ineffectual and inappropriate; that the plaintiff relied upon the truth and integrity of the defendant's agent that the policy would be written as contracted for, and for that reason the policy was not read until after the loss occurred; that the defendant attempted to take advantage of its own wrong, by showing that payment of the loss was refused because the plaintiff's custodian was not on the premises, as defined in the policy, which the plaintiff alleged was a wrong definition. The plaintiff prayed that the suit in the municipal court be consolidated with the equitable suit in which a reformation of the contract was sought, so that the plaintiff might thereby be relieved of the hardship of the clause in the policy which required that any suit on

the policy be instituted within two years from the date of the loss; that the policy be so reformed as to speak the true contract of the parties, and that the plaintiff recover for the loss sustained.

The court sustained a demurrer to the petition, on the sole ground of laches, overruling all other grounds, and dismissed the action. The plaintiff excepted to this ruling, and the Supreme Court reversed the judgment, holding: "We do not think that the facts alleged show such laches on the part of the plaintiff as would prevent maintaining a suit upon the policy if it be reformed in accordance with the prayers of the petition." *Southern Feed Stores Inc.* v. *Great American Indemnity Co.*, 182 *Ga.* 442 (185 S. E. 723). The case went back to the superior court, and a trial resulted in a verdict and judgment for the plaintiff. A motion for new trial was overruled, and the insurance company excepted.

Ground 4 of the motion for new trial assigns error because the verdict is contrary to the evidence and without evidence to support it, for the particular reason that such evidence discloses that Oberdorfer Insurance Agency had no authority to agree to issue a robbery policy contrary to the standard form printed and used by the defendant in such cases. The evidence discloses that Oberdorfer Insurance Agency represented the Great Indemnity Company in writing insurance of the nature involved in this controversy. As a matter of fact the company received the premiums after the issuance of the policy by Oberdorfer Insurance Agency, and recognized the existence of the policy. As to whether the petition sets out a cause of action for reformation of the insurance policy because of an agreement of the provisions thereof between the insured and the agent of the insurance company, this is not now an open question. The insurance company filed a general demurrer to the petition, which was sustained on the sole ground of laches, and all other grounds of general demurrer were expressly overruled. The case was brought to the Supreme Court, and this court reversed the judgment, holding that the petition set out a cause of action and did not show such laches on the part of the Southern Feed Stores Inc., as would bar the action. It is further argued that the verdict was contrary to the evidence and without evidence to support it, for the reason that the custodian in charge of the premises at the time of the robbery was not such custodian as was contemplated by the policy, but was a watch-

man. The policy provided: "Robbery as used in this policy shall mean a felonious and forcible taking of property by violence inflicted upon a custodian. . . 'Custodian' as used in this policy shall mean . . any person not less than seventeen nor more than sixty-five years of age, who is in the regular employ of the assured and duly authorized by him to act as his paymaster, messenger, collector, cashier, clerk, or sales person, and while so acting to have the care and custody of property covered hereby, but who is not a watchman or a porter." It is claimed that the person in charge of the premises at the time of the robbery was a watchman, and did not qualify under the terms of the policy as a proper custodian. E. S. Baker, testified for the plaintiff: "In 1932 I was with the Southern Feed Stores. My duties were to check in the trucks and check in the money which the truck-drivers brought in after Mr. Kitchens closed. When Mr. Kitchens left, he turned the whole business over to me, and when a customer came after goods I sold them to them. I did not keep the doors open, but I would open the door. We had a door on the side where we waited on customers. We never did wait on customers at the front door; they came into the office and left the orders, but the goods were loaded at the side door where I sold the stuff. I hardly ever stayed open after eight o'clock. There was nobody there to tell me when to close up, and I could have kept open until twelve o'clock if it had been necessary. Some of the people who came by and bought stuff from me was Johnny Gilbert, from Forest Park, and J. W. Harris, and T. O. Stevens, who is dead, and Tony. They were farmers who would bring trucks up here to this market and dispose of their stuff. I have sold Mr. Johnny Gilbert oats and feed at different times. He runs a dairy at Forest Park, and I sold him corn—anything we had in the store; flour. My other duties were to straighten up the stuff. You see, during the day they would mix up the canned goods, and I would straighten them up; and if a space was empty I would take another case and open it and put up the stock. Mr. Kitchens gave me those instructions. I also cleaned up the office and kept it in shape, and I would collect money and bring it in. . . When a truck was out late and come in, I saw that the truck was put up properly in the garage, and the driver checked in the money with me. I put the money away and made a little note of it for Mr.

Kitchens, and I would receipt him." It will be seen from this testimony that the custodian (the witness) qualified under the terms of the policy as a "collector, clerk, or .sales person," and was not merely a "watchman or porter."

This suit was brought to reform the policy so as to make the term "premises" include the grounds around the building as well as inside the building, it being the contention of the plaintiff that such was the understanding and agreement with the agent who wrote the policy. It appears that the custodian of the building at the time of the robbery was just outside the door of the building, which was locked when he was held up at the point of a gun and bound and gagged and put under the building while the robbers entered the building and robbed it of merchandise. It is argued that the custodian could not have had the care of the building when he was outside. There is no merit in this contention, for the jury found in favor of the plaintiff on the question of reformation of the policy, which they were authorized under the evidence to find, that the term "premises" included the entire premises of the plaintiff, as well as "within the building," and it appears that the custodian was in charge of the building when he was outside the door but on the grounds or "premises" of the plaintiff.

Ground 6 of the motion for new trial assigns error because the verdict was contrary to law, for the reason that the evidence showed that on May 23, 1934, the plaintiff filed in the municipal court of Atlanta a suit which resulted in a verdict for the plaintiff, and the judgment refusing a new trial was reversed by the Court of Appeals on the ground that the verdict was without evidence to support it; that the filing of the above case and the prosecution of the same to a conclusion without success constituted an adoption of the policy as written, and no suit for reformation could subsequently be filed. This ground is without merit, and was ruled upon in 182 *Ga.* 442, when this case was before this court on demurrer. This court held that "There was no such election of remedies in bringing the suit at law as to preclude the maintenance of the present suit for reformation of the contract sued on, and for judgment on the contract as reformed." This court also ruled, in 182 *Ga.* 442, that the petition did not show such laches on the part of the plaintiff as would bar the

action for reformation of the contract. The court said: "The suit at law was brought on the policy in the municipal court of Atlanta, where a judgment was rendered for the plaintiff. This was taken by the insurance company to the Court of Appeals, where that judgment was reversed. *Great American Indemnity Co.* v. *Southern Feed Stores Inc.*, 51 *Ga. App.* 591 (181 S. E. 115). The Court of Appeals held that the plaintiff could not recover under the doctrine of estoppel or waiver, etc. And the bringing of this equitable action in the superior court to reform the policy is not, in considering the question of election, to be treated as a separate and distinct suit. If the action at law which was brought in the municipal court had been brought in the superior court, it might have been amended by adding the allegations of mistake and the other grounds for the reformation of the contract which are made in this equitable action." Therefore the ground of the motion for new trial which raises this same question is without merit.

5. Ground 8 assigns error because the court refused to admit in evidence a copy of a suit in the municipal court of Atlanta, and all pleadings in said case, wherein Southern Feed Stores Inc. brought suit against the Great American Indemnity Co., to recover for the loss sustained under the policy here involved. That suit resulted in a nonsuit. It is contended that this evidence was offered to show that the plaintiff had adopted the contract of insurance which it was sought to reform, by having filed such suit. This contention is without merit. As ruled in 182 *Ga.* 442, the petition for reformation of the policy set out a cause of action, and could be consolidated with the suit in the municipal court. The suit which was filed in the municipal court after the suit which was nonsuited involved the same questions as the latter suit; and if the plaintiff had the right to bring the suit for reformation, the prior suit in the municipal court which was nonsuited could throw no light on the questions involved in the suit for reformation. The court did not err in refusing a new trial.

*Judgment affirmed. All the Justices concur.*